The fourth district appellate court of the state of Illinois has now convened the Honorable Robert J. Steigman presiding. Thank you, Mr. Good afternoon. Everyone. This is our case this afternoon, which is, excuse me. 425-0290. People state of Illinois versus Gaines. And I would ask counsel for the felon, please state your name for the record. Good afternoon, Justice Seidman counsel for appellant Richard Gaines, Jake Aronson. Thank you counsel for the employee. Sorry, I was locked up there for a 2nd, um, it's 1st name Allison page last name Brooks on behalf of the people. Okay, thank you. Council. Okay, I've been advised that our normal timer is not working. So what will happen is the bailiff will give you 2 minutes warning when you just 2 minutes left on your. Argument is your song. Thank you. Mr. Bill. Okay. Mr. Aaron said on behalf of the defendant, you may proceed at this time. Thank you again, just a segment and good afternoon and may it please the court. My name is Jake Aronson again and I represent Mr. Richard gains. In his opening brief, Mr. Gaines raises 3 arguments unless this court has questions on argument. 1, I'm going to begin today with arguments 2 and 3, which respectively are Mr. Gaines is excessive sentence and sufficiency arguments. 1st, Mr. Gaines is sentence. Is excessive, he got 59 years, the maximum possible sentence here, which is a de facto life sentence for Mr. Gaines who can't leave leave prison until he's 88 years old. Mr. Gaines has 0 history of violence and no prior sex offenses, despite a history of serious mental health disorders. Physical and mental abuse by his father and homelessness for years before trial in this case. And the unique circumstances here, which, while this tasteful do not call for a maximum de facto life sentence. This is certainly not the kind of offense that merits the same sentence as predatory criminal sexual assault or 1st degree murder yet. Mr. Gaines got a maximum de facto life sentence. 59 years the ceiling, which would put him out of prison again when he's 88 years old. Holding aside our statutory argument under the under the sentencing scheme. Mr. Gaines face the minimum sentence a floor of 15 years. So, the question we're answering affirmatively here today is. Did the trial use its discretion by making Mr. Gaines a ceiling case. So, I wish to address your attention to the 2nd of the 2 arguments you're going to raise and that it's. With regard to the sufficiency of the evidence and in doing that. Excuse me. I want to make sure I understand what the defendant's position is here. For instance, the defendant was convicted of 3 separate counts of criminal sexual assault. Was he not? He was that's correct. Is my understanding correct that you are challenging the sufficiency of the evidence. And 2 of those 3 convictions, but not on the 3rd. That is correct counts 3 and 5, as they were originally numbered in the indictments. Okay, so count 6. You're not challenging. That's the 1 where the handcuffs were supposedly used. Is that right? That's correct. So. Your argument is that counts 3 and 5, the evidence of threat of force or use of force was not sufficient to sustain those convictions. This is a somewhat procedurally complicated case where there are multiple charges brought and multiple convictions. And if my understanding is correct, the defendant was convicted of aggravated criminal sexual abuse with regard to those actions pertaining to those same counts. Was he not? He was convicted of 2 separate counts of aggravated criminal sexual abuse. But at sentencing, all parties agreed that any aggravated sexual abuse related to the behavior, the conduct as charged in 3 and 5, the criminal sexual assault counts merged into those 2 counts. Well, that's I think what my understanding was, and that leads to the next question. If this court were to agree with you that the evidence was not sufficient on counts 3 and 5 regarding the use of force, and we agreed with you that those convictions had to be reversed, what then regarding how at sentencing these lesser offenses were blended into that sentencing? In other words, what should happen? What should we tell the trial court to do under those circumstances? What should the trial court do on remand? Yes, well, of course, Justice Steinman, we're asking for outright reversal, given that all parties agreed that this was based on the same exact conduct, and as charged in counts 3 and 5, it would charge at least to involve force. So we're asking for outright reversal. But that's on the criminal sexual assault counts. Yes, that's correct. But you haven't challenged the sufficiency of the evidence on the aggravated criminal sexual abuse counts, have you? No, no, sir. Okay, so go ahead. So then again, we agree with you on counts 3 and 5. What should we say? What should we do? What should the trial court do on remand? Well, Justice Steinman, not to sound like a broken record, but we, of course, are asking for outright reversal. What could the court do? The court could separate those counts and for a separate case, excuse me, count by count determination of whether the evidence was sufficient to prove the conduct that was charged. Well, he was convicted of aggravated criminal sexual abuse. There was no claim raised, well, just the general claim, the evidence wasn't sufficient in the trial. But you're not challenging those convictions now on appeal. So I suppose my question would be more direct is, if the greater offenses, the criminal sexual assault convictions were vacated, wouldn't that mean that the trial court should go back and consider further, I guess, a new sentencing hearing because we've had now two of these vacated and to see how that would affect the court sentencing, but also for sentencing on the lesser offenses, the aggravated criminal sexual abuse sentences, which were melded into the greater offense. Isn't that what should happen? Well, Justice Steigman, I suppose that on one hand, the reason why we're obviously not challenging the lesser offenses of aggravated criminal sexual abuse is because their sentence was not entered on them. So it's certainly possible that Mr. Gaines could- Well, to be more specific, you're challenging the criminal sexual abuse convictions on the claim that the evidence was not sufficient to show force or threat of force. That's correct. It's not an element for the other offenses, is it? No, it is not an element, but- On this record, what would be the basis? I know you're a vigorous, experienced advocate, Mr. Aronson, but on this record, what's the basis to argue that the evidence wouldn't have been sufficient to support those convictions? Well, Justice Steigman, I am admittedly not prepared to argue sufficiency on unsentenced convictions today. So again, what the trial court could do if this court were to reverse the convictions on counts three and five and remand with instructions to re-evaluate on a count-by-count basis the lesser included offenses, I would have to review the record when it came to our office. Well, wouldn't it be- It's not a matter of re-evaluating. Wouldn't it be a matter of resentencing, sentencing the defendant on the aggravated sexual abuse offenses? Will that be a matter for the trial court's determination? Well, no. Actually, in the first instance, I think it's for us. Namely, I preface this question, if we agree with you that counts three and five are not- the evidence is not sufficient, what directions should we give to the trial court? Because clearly, there'd have to be a resentencing in this case. What directions do we give the trial court with regard to the lesser offenses which were melded into the now vacated more serious convictions? Justice Steinman, I suppose that you could get- that this court could give direction to the trial court to re-enter convictions on the merged offenses. That said, I do think that there is a- there would still be an outstanding question about the sufficiency of the evidence on those- on even those counts, only because there has not been an opportunity to address whether the fact of the insufficiency on counts three and five may also contribute, or if there may also be a lack of sufficiency of the evidence on the unsentenced convictions. Well, as a matter of fact, you had all the opportunity in the world to challenge the sufficiency of the evidence on the aggravated criminal sexual abuse convictions in this appeal. You could have said, by the way, those convictions are no good either. But you didn't. I suppose, Justice Steinman, that yes, you're correct. We could have- we could have- we could have included in our- in our briefing that- that this court can consider the insufficiency of evidence on counts not- where sentence was not entered. But on the facts here, we are simply making the argument that counts three and five don't support- the evidence does not support convictions on counts three and five. I'm taking up a lot of your time, and I appreciate your answers to my question, and you may continue with your argument at this point. Thank you, Justice Steinman. So, returning to the- to Mr. Gaines's excessive sentencing argument, the question we're asking today and answering affirmatively is, did the trial court abuse its discretion in making Mr. Gaines a ceiling case? It did. In fact, there is zero evidence that the trial court actually considered Mr. Gaines's mitigating evidence, and the fact of a maximum de facto life sentence shows it. Mr. Gaines's only criminal history, three traffic offenses from 1997 to 2003 with no prison sentence, one criminal trespass in 1998 with time served in probation, no prior sex offense conviction, making Mr. Gaines categorically different from the class of defendants the courts punish with de facto life sentences. Mr. Gaines has showed his rehabilitative potential in his sentencing elocution. He expressed- he explicitly expressed his remorse, especially in light of the religious learning that he's been doing since even before trial in this case. He goes to church services in prison. He participates in Bible study in prison. He was going to substance abuse meetings before trial here. He's completed a mood management and a jobs partnership course. Half the equation of sentencing in Illinois, as this court well knows, is rehabilitative potential. Counsel, you're arguing to people who have had the benefit of having been trial judges before we got into this wonderful job and were not inexperienced with people who have found God and religion between conviction and sentencing hearings. Called maybe a little bit of skepticism about all of that. It's possible that someone who's engaged in all these good behaviors might indeed be sincere, but there certainly is a big motivation to try to come across that way, whether you're sincere or not. I don't deny that, Justice Steigman, but this court at this posture is simply considering whether the facts presented to the trial court were what they were and whether the sentence reflects the kind of rehabilitative potential that Mr. Gaines has demonstrated that he has. I can't speak for all of the many other incarcerated people who have participated in programs in prison, before prison, etc., but I can say that Mr. Gaines, on the facts here, did not deserve a de facto life sentence. The fact of his participation in these forces is evidence of that. We don't demand that incarcerated people participate in these. Whatever the reason that he participated is, frankly, irrelevant at this posture. He did, he expressed his remorse, and he shows the kind of rehabilitative potential that deserves sentencing relief, or certainly does not deserve a de facto life sentence. Again, many of the other facts here that are unique to Mr. Gaines, he was mentally and physically abused by his father for 20 years, which contributed to several of his serious and diagnosed mental health disorders, including post-traumatic stress disorder, bipolar disorder, schizophrenia, depression, anxiety, and even a possible psychotic disorder that requires prescription medication. That's a perfect storm of trauma that he had to overcome, and which he has already showed progress overcoming. In its response brief, the state says basically nothing about all this mitigation, simply repeating the facts of the offense, and that the trial court considered it. But again, the fact of a de facto maximum life sentence here suggests otherwise. Unless, so we're- Counsel, if I may. Yes, of course. Is there anything specific in the record that you can point to, to show us that the court did not consider these factors? Because it seems to me you're just suggesting that you don't like how the court weighed the factors and you're asking us to reweigh it. Yes, Justice Leonard. The evidence that we're pointing to indeed is the fact of a maximum de facto life sentence, in addition to the fact that, holding aside again our statutory argument, this court also applied all sentences to run consecutively where it had discretion to run the two aggravated criminal sexual abuse counts concurrently. Between the fact of a maximum de facto life sentence and the fact of all consecutive sentencing, we do believe that the facts here suggest that the court did not consider any mitigating evidence, but considered, Mr. Gaines, like I said before, a ceiling case where there is plenty of evidence showing that this is anything but a ceiling case, not the kind where trial courts in their discretion sentence defendants to mandatory de facto life sentences. And the victim was 14, and one of the counts that you're not challenging here is where he handcuffed her to a bar in a bathroom, correct? That is correct. Thank you. Yes. And unless this court has further questions on argument two, I will move on to argument three, which I have begun touching on with Justice Steigman, the sufficiency of the evidence for count three and five. In those counts, the state charged Mr. Gaines with criminal sexual assault by the use of force. The jury was instructed that the state had to prove beyond a reasonable doubt that the act was committed by the use of force or threat of force. But there was zero trial evidence that Mr. Gaines did so on these counts. As this court knows, force does not include any force inherent to the act, and it can't just be implied. There must be some action to compel another person to submit to a sex act. Here on counts three and five, there was none. The state says that J.C., the complaining witness's testimony that Mr. Gaines said he would kill himself proved the force element, but the state is grossly misrepresenting this evidence. For one thing, this evidence was a turn of phrase, not a threat. No one who heard it at the time would have interpreted it as anything but hyperbole. But even if a person read the words out of context and thought it were, the turn of phrase was about an unrelated thing, not a sex act, and certainly not a sex act charged here. J.C. testified that Mr. Gaines made this hyperbolic comment about killing himself if J.C. rejected his marriage proposal, not if she refused the sex act. This is the only evidence the state cites to prove the force element. The state is trying to bootstrap this hyperbole about an unrelated thing at a different time to prove force for any sex act that happened thereafter. The state's case is so flimsy because there is no evidence here that Mr. Gaines used any force or any threat of force, certainly not with this particular turn of phrase that had nothing to do with a sex act. Contrast the lack of evidence here with this court's opinion in People v. Watts, which the state is citing to try to prove force through a defendant's real threats of self-harm as they were there. But Watts isn't even close to on point. In Watts, the court was deciding admissibility, not weight of testimony about the defendant's prior threat. And for another thing, this court there in Watts said that the testimony about the defendant's threat of self-harm was not a material factor in the defendant's convictions. There was ample evidence of physical force that proved that element beyond a reasonable doubt in that case. Here, on the other hand, Mr. Gaines used this hyperbole, this turn of phrase about whether J.C. would marry him at some unknown point in the future, not about a sex act. And that is the only evidence in the record that the state points to to connect force with counts three and five. But there is. If I may, just a couple of questions. Would you agree that when we are considering whether a defendant used force or the threat of force, that we can take into consideration the surrounding circumstances and conditions in which the incident occurred? Would you agree with that? Yes, Justice Leonard. OK. So just for a point of clarification with the record, we've already talked about the count that you're not challenging that I mentioned earlier with regards to the bathroom. I guess in the record, is there anywhere that connects that charge, if you will, that act occurring before the two counts where there was a discussion of use or threatened force to put his penis in J.C.'s mouth or to touch her vagina with his mouth? Meaning, is there anything in the record anywhere that we can can tie those two acts being similar in time to that particular event? There is not, Justice Leonard. Those those are separate. Those were separate acts about which J.C. testified separately. And even on count five, J.C. was asked specifically at trial, was were you restrained in any way? And she said no, not when he was doing that. And I recall that from the record. Thank you. I just want to confirm that. Anything further, Justice Leonard? No, thank you. Counselor, your time is up. You'll have another opportunity to address us in rebuttal. Ms. Brooks, on behalf of the state, you may make your oral argument at this time. Thank you, Your Honor. May it please the court and counsel. It seems like the defendant's, excuse me, argument is with respect to the de facto life sentence is that the only evidence of the supposed failure to consider mitigation is in the fact that it's not reflected in the sentence. But the state cites the case that says that the court is not required to reduce the sentence from the maximum allowed on account of mitigation. So it seems what the defendant is really asking for is to simply have this court reweigh the factors in mitigation and aggravation, which is not, excuse me, the proper role of the appellate court. And in this case, based on what the trial court did find about this offense and this defendant and these offenses, that it was a reasonable exercise of discretion to impose discretionarily consecutive to the extent that the aggravated criminal sexual abuse counts are not mandatory consecutive. But for the protection of the public, because as the trial court found, this defendant had terrorized J.C. for an extended period of time. She lost count of how many times that she was sexually assaulted in this way. The prosecutors also cited how callous he was towards her. And in that situation, I think that those are very, very powerful factors that overweigh all of the mitigation that the defendant is so aptly citing. But it's still up to the trial court to weigh that mitigation against the circumstances of the case. And in that case, this is a very severe set of offenses. And that's why it is fully warranting the maximum terms that the prosecutors asked for the trial court gave to protect the public from this defendant. And a lot of the mental illness factors and things that defendants sites can cut both ways. There's kind of a double edged sword. So for that respect, this court should affirm the conviction. With respect to sufficiency of the evidence, what the prosecutor did argue and what the state argues on appeal is that essentially what the defendant has here is a sort of standing threat of self-harm. There's J.C. lost track of the number of times that he put his penis in her mouth. He had said that she would be his wife and he was treating her like his wife, essentially, and by engaging in so much sexual activity with her. And that's why she didn't feel entitled to say no, because he threatened to kill himself if she would refuse him treating her as his wife. And that extends essentially to the acts of sexual intercourse and that are involved in the charges. And that's why the prosecutors asked the jury that to convict on the basis of the threat of force that was inherent in the defendant's threats of self-harm, that the jury agreed with that theory and convicted the defendant on all these charges. And therefore, if this course were to review the record in a light most favorable to the prosecution, it shows that the jury made a rational, reasonable decision to apply the defendant's threat of self-harm as a threat of force that would apply to all of the criminal sexual assault charges and convict them. With respect to the possibility of the defendant not having an opportunity to contest the sufficiency of guilt on any unsentenced account. Before you jump into that, if I could just ask this question, if this court were to disagree with regards to your feeling that the marriage proposal was this overarching umbrella, if you will, of threat of force in this context, what other evidence in the record shows threats of force as it relates to putting his penis in JC's mouth or touching her vagina with his mouth? Well, there was nothing cited by the prosecutor below, and I don't believe there was anything that would be in excess of like the act itself. As the defendant says, the actual force necessary to accomplish an act is not what the statute is directed at. The use of force means something more. And other than the handcuffing, which was a separate count, there was nothing else in the record that would qualify as actual use of force. So that's why the state below did not even rely on anything other than the defendant's threats of force. Ms. Brooks, I also want to ask you the same questions I was asking Mr. Aronson about if we were to agree with his arguments that the two counts he's challenged of criminal sexual assault, the evidence is not sufficient. What do we do? What should be the action of this court? There would have to be resentencing because maybe two of the counts are gone. But what about the counts, the aggravated criminal sexual abuse counts that were melded into the greater offense? What is your advice to this court and how we should address that situation if we were to so find it? Yeah, thank you, Your Honor. Obviously, the defendant's position was outright reversal and the state was urging affirmance. So neither of us really addressed the possibility of imposing sentence on merged counts on remands. And that's why I guess in this situation, I was trying to address the defendant's claim here at this argument that he has not had an opportunity to essentially address the of the evidence of unsentenced accounts of counts. And if he is, in fact, sentenced on remands for additional counts, he would have an opportunity to appeal again. And that's why he would have an opportunity at that point to raise his claim if he wants to if the defendant would like to in the next appeal after he's been sentenced on the merged accounts, then to say whether there was sufficient evidence, for example, is something he could do in a future appeal. So he has a trial court on remand to just go ahead and resentence the defendant. And the in addition, since Julie's counselor would be gone to sentence the defendant to the extent that that would matter on the count still remaining and have a new sentencing hearing and also consider the aggravated criminal sexual abuse counts. The the aggravated criminal sexual abuse counts that were not sentenced because of the merger.  Yes. Right. And so the the only reason why he is not standing convicted of those accounts was because he was convicted of a greater offense. And if those greater offenses are no longer there, then there should be nothing staying in the way of imposing sentence on the lesser counts. And to the extent that the defendant maybe feels like he has not had an opportunity to challenge those counts in this appeal because they were not, in fact, sentenced on remand then then he would have an opportunity after sentence is imposed to take another appeal and then raise that argument if he wishes. Regarding the offense that the defendant is not challenging the sufficiency of the evidence on, I think it's count six. He was sentenced on that and he's challenging his sentences overall because they're excessive, namely because consecutive sentences and so forth. But if the two of the three are vacated or reversed, is there any need or is it appropriate or what should we say about the sentence on the one count that was not even challenged? Is there any need? In other words, to be more explicit, is there any need or should we suggest or what should we tell the trial court about the sentence imposed on count six, which is not being challenged? Just to leave it alone and impose sentence on the others? Well, that is a good question. In a sense that the defendant will be sentenced again if this case goes back in that regard. So he will have an opportunity to appeal the entire sentence again if this court has not, in fact, say, taken count six and say it's affirmed because 15 years is not excessive. That would be raised judicata at that point if you take another appeal in the future. But if this court declined to reach the merits of the sentencing argument, realizing defendant is going to have another sentencing hearing and that all the sentence is going to come back and it will not have been previously adjudicated, then he will have an opportunity to challenge his entire sentence. And it does seem like, I mean, he's going to be in prison for a long time no matter what. So if this case is going to come back, it's not like he's going to be prejudiced by the delay of having to go through another appeal. So I think in this respect, that would be a fair outcome if this court did vacate a couple of the criminal sexual assault convictions is give him an opportunity to receive another sentence and have a complete opportunity to appeal the entire sentence in a future appeal. So this court would have... So you think that if we were to reverse two of these convictions, then even though we would affirm the third conviction, we should remand for a new sentencing hearing on everything? Not on everything. On the other remaining accounts. But this court would have jurisdiction, I mean, discretion, whether it would like to withhold a resolution of the excessive sentence argument. Because defendant, I think, has made the argument here that it's a de facto life. It's 59 years consecutive. He's not going to be in his late 80s when he gets out of prison. If that's mostly the basis of his argument and that's going to go away with two of those accounts being replaced by lesser terms because of the lower maximum sentence of the aggravated criminal sexual abuse, for example. So he's not going to suffer as long of a prison term on remands if the two of the criminal sexual assault convictions go away. So that would change the nature of his argument. That's why I think he may want an opportunity to argue sort of the entire sentence in the future, whereas if this court were to say 15 years on count six is not an abuse of discretion under the circumstances and that's affirmed. And then he's only going to be able to challenge the sentences that are imposed on remands. That may hamper his ability to sort of argue the sentence in total, which I think is what he's tried to do in this appeal. And he may want to do again. But maybe that's a question for him in the rebuttal. It's my sympathies. I think the sympathies of this entire court are always with the trial court. Namely, we want to be as helpful and as clear to the trial court as we can be. And as I mentioned earlier, we are all our former trial judges who've been victimized by the common enemy, otherwise known as the appellate court. And we seek to avoid doing that in the future now that we're on this court. So, literally, the question, if we were to reverse on two of these convictions is if I'm the trial judge, okay, what do I do now with the sentence I imposed, that 15-year sentence on count six? Is that something on remand for resentencing on the aggravated criminal sexual abuse counts, which had merged and I hadn't sentenced on? Is that something I can or should address on remand? And I think we should probably say something about that. And that's what I'm asking you for what your advice would be to this court. And I will then ask Mr. Ernst again for what his advice would be to this court on what we should tell the trial court so the trial court isn't going to be throwing up its hands and saying, now what? Thank you, Your Honor. It's a very good question. Essentially, this court should not disturb the existing sentences that are not, if this court vacates of crimes because they weren't proved, the sentences for those offenses would go away if then this court would remand it for sentencing on the merged counts that were never sentenced before because of the existence of the greater charges, which are no longer there. But the other counts don't need to be disturbed if they're not excessive. Now, this court has discretion if it wants to address those counts and decide whether they're excessive or not. If this court does not do that and would like to just simply send it back, then I mean, the trial court, I think at that point, needs to be told only to impose sentence on the new sentences that need to be imposed as a result of this court if it vacates two of the convictions and sends it back to impose sentence on any of the merged accounts that now need to be sentenced. So essentially, I would just, that's the direction I would give them is the court to just impose the sentence on those merged accounts that now need sentences. Let me make sure I understand. By the way, thank you. This is a little unusual and I appreciate your assessment of all this. It's your position that, and I think you're correct, the defendant's sentencing argument is based upon the fact that he received consecutive sentences. But I don't know that the one offense, one 15-year sentence, which is all that's left, can be a basis for his claim, at least at this point. I'm not sure. But so your position is, if I understand correctly, we should show that conviction affirmed and the sentence affirmed for that matter, because there's no challenge to it. That should be our affirmation to, I think, through the one conviction, send it back to the trial judge to sentence on the merged offenses. And then the defendant would still, if I understand you correctly, have the right to appeal anew the sentence imposed by the trial court on the merged offenses and what the trial court, whether the trial court made those concurrent with or whatever the trial court would do with regard to the 15-year sentence on the count six. I'm not sure I stated that very well, but I suspect you got my gist. Yes. Is that what you're suggesting to us? What I am suggesting, I guess to make it also clear if I can, is not to disturb any sentences now other than the ones that are getting, if convictions are going to be vacated, just obviously those go away. Um, this court would have discretion to like the remaining 15 plus seven plus seven to decide whether that was excessive under the defendant's arguments. Um, if not, it would go back for just to impose sentence on the merged accounts that need sentences and then come back again for the defendant to claim that the entire sentence is excessive if he wishes to. Again, I'll be asking Mr. Ernst the same thing to, and Roberto will give him an opportunity to give us his recommendation as well. Anything further, counsel? No, thank you. If I may, um, I have one question, counsel, or I guess a bit of clarification from the record. And I ask, um, similar questions of opposing counsel. It appears to me in the bill of indictment, the timeframe for each of the accounts was from May 1st of 2022 through August 4th of 2022. So when we're looking at the context of these count three, five, and six that we've been discussing, is there anything in the record that puts those in any type of more specific chronological order for us? I don't believe that there's any specification as to the time ordering of all this other than they happened a lot. So, and she lost track of how many times. So I think it's, it's kind of a good indication that it wasn't just a one-off event, that it was actually many, many times that happened over a long period of time. There was nothing to suggest that count six happened before count three or count five before count six. Not that I know of, your honor. Thank you. Yes, go ahead. I have a time-related question as well. You had mentioned the self-harm as a threat. Is there anything in the record that says where, when that threat occurred in relation to the, the charged sex offenses? Nothing specific other than the fact that the defendant was essentially, the inference could be that the defendant was treating her as his wife and therefore that this is all kind of within the same circumstances of the, the bundle of offenses all happened in that sort of same context of him treating her, the girl as his wife. And so therefore the, the idea that he was going to make her his wife and he was going to harm himself if she said no is a part of the entire context of all of the offenses. And that was the theory below. The state's insistence is that that's a reasonable inference from the record. Although there is, your honor, I think is asking, there's nothing specific to say that that threat happened at any particular time with relation to the other offenses. So if we accepted your argument that that is in fact a threat, but it occurred after some of those sex offenses, that could not be the threat element for that particular offense, correct? Yes. If it had, if this court finds that the threat would have happened afterwards, then obviously logically it could not have applied to that particular offense. That's correct. All right. Thank you. Thank you. And that's the extent of my arguments. Unless you have further questions. Thank you, counsel. Thank you.  Robinson and Roboto. And I'm particularly interested in the discussion that you might have for us on the same basis that I asked Ms. Brooks, if we agree, what do we do? And, you know, your argument on sentencing is a strong one, but if there's only one count, it's considerably less strong. Is there any reason that this court has to address that now if the case is going to go back for resentencing or the defendant? In other words, it seems to me the defendant, as Ms. Brooks points out, is not prejudiced if the trial court resentences him or actually sentences him for the first time on the merged offenses, the aggravated criminal sexual abuse offenses, and gives him X sentence on those. And I don't know to what extent. I don't want to be running an opinion. Could it even be made consecutive to count six? Maybe. I don't know. But the point is, whatever the court says that sentencing would be appealable anew. What is that? Yes, of course. And on that, we agree with the opposing counsel that any new sentence would be appealable. Is there any reason we need to address at all what the court should do with the sentence on count six? I suppose is maybe the most direct way of putting it. Well, Justice Steigman, in your back and forth with opposing counsel just moments ago, you expressed that your sympathies lie with the trial court. And so, yes, in the interest of judicial economy, it would behoove this court and the trial court to to resolve the excessive nature of the sentence and give guidance to the trial court to not impose consecutive sentences and to not impose the maximum sentence on any sentence on which it didn't enter a conviction because of the merger issue, but might if this court reversed count three and five and remanded. So it's our position. It's Mr. Gaines's position that we would still face an excessive sentencing argument. And of course, that would be appealable based on the facts of resentencing. But even without even if this court just reversed count three and five outright and knocked 30 years off of the paper sentence for for Mr. Gaines, he would still be in prison for for a sentence. He would still be facing 29 years in prison running the discretionary consecutive sentences, the aggravated criminal sexual abuse running consecutively and each of the three remaining counts facing a maximum sentence. We still would argue that that's excessive. And then, of course, if if the court, the trial court resentenced on the merged, the merged convictions on sentence in the first place, then, yes, we would be facing more than 29 years. So that's all to say in the interests of judicial economy, given the sympathies with the trial court, we would encourage this court to resolve the excessive sentencing issue in light of the maximum consecutive sentences that Mr. Gaines received at the trial court the first time. Thank you. I don't want to shut off any other rebuttal argument that you might wish to make. I, I, I will I will simply say, say again on on the excessive sentencing argument. Yes, of course. Of course, this court, as as you asked me in my opening argument, this court is is being asked to weigh some of the or reweigh some of the evidence that was presented at trial. But of course, as this court knows, we cannot determine whether the trial court abuse its discretion without considering the very mitigating evidence that that we're pointing out. The trial court seemed not to have considered given the maximum and the maximum consecutive sentences here. The state also, if I may, if I can direct kind of similar questions that Justice Fancel and I asked a few moments ago with regards to the timing questions. You heard those questions that we asked of Ms. Brooks. Do you have anything further that you believe the record reflects that would allow us to have a better sense? For example, when the statement that you're suggesting relates only to the marriage was made that the state suggests is part of the threat of force, as well as any further suggestions as to whether count six occurred before count three or count five? Well, justices Leonard and Bancel, the only specific trial evidence with respect to with respect to that that marriage proposal and that and that turn of phrase about self-harm was with respect to that turn of phrase. And I apologize for the circular logic here, but our entire argument is the lack of trial as charged in counts three and five. So my answer directly is, no, there is no evidence to help give us guidance on the timing. And that bespeaks the state's inability to prove the force element beyond a reasonable doubt. And then finally, circling back just one moment to Justice Steigman's comment, and I know we've kind of I don't want to belabor this too much because I know we've gone over it, but just as direct as we can, if this court were to agree with you with regards to counts three and five on remand with a new sentencing, are you suggesting in any way that your client would be entitled to a different sentence on count six if this court either finds that there is no excessive sentence at this point or declines to address this issue? Yes, Justice Leonard. We do believe, as we argue in the opening brief, that Mr. Gaines's case is much closer to a floor case rather than a ceiling case. So he was sentenced to the maximum on count six, 15 years. We believe that- The only basis of that would be that he would be resentenced on that count would be if we found it to be excessive. Yes, that's correct. Okay, thank you. And if this court- Thank you. Go ahead. Thank you so much. If this court has no further questions, we respectfully ask this court to reverse the convictions on three and five and determine that his sentences were excessive. Thank you very much for your time. Thank you, counsel. I want to mention Mr. Aronson and Ms. Brooks, you both have done a very nice job in some unusual circumstances here, and I appreciate very much your responses to my questions, particularly mine that were not all that clear, and nonetheless, you did a nice job responding to them. So thank you for that. The court will take this matter under advisement and I'll stand in recess.